1  Laurence M. Rosen (SBN 219683)
2  **THE ROSEN LAW FIRM, P.A.**
3  355 South Grand Avenue, Suite 2450
   Los Angeles, CA 90071
4  Telephone: (213) 785-2610
5  Facsimile: (213) 226-4684
   Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| ROBERT J. MATTHEWS, Individually and on behalf of all others similarly situated, | Case No: |
|---|---|
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | <u>CLASS ACTION</u> |
| COMPASS GROUP DIVERSIFIED HOLDINGS, LLC., COMPASS DIVERSIFIED HOLDINGS, MORDECHAI HAIM FERDER, ELIAS J. SABO, RYAN J. FAULKINGHAM, and STEPHEN KELLER, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

Plaintiff Robert J. Matthews ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and

belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Compass Group Diversified Holdings, LLC, and Compass Diversified Holdings, ("Compass", "CODI", or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Compass securities between May 1, 2024, and May 7, 2025, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendant's violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES AND RELEVANT ENTITIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Compass securities during the Class Period and was economically damaged thereby.

7. Compass Group Diversified Holdings, LLC, and Compass Diversified Holdings are a trust and LLC, respectively, that form the publicly traded entity known as "Compass." Compass' public filings consider the trust and LLC to form one company together, and for the purposes of this complaint, we do to, and refer to the combined entity as "Compass", "CODI", or the "Company."

8. Defendant Compass is a Delaware corporation with its principal executive offices located at 301 Riverside Avenue, Second Floor, Westport, CT 06880. Compass' common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "CODI", and its three classes of preferred stock trade on the NYSE as "CODI-PB", "CODI-PA", and "CODI-PC".

9. Lugano Holdings, Inc., ("Lugano") is a subsidiary and operating segment of Compass, which owns 60% of Lugano. Lugano is headquartered in Orange County, California, with offices at 545 Newport Center Dr, Newport Beach, CA 92660.

10. Defendant Mordechai Haim "Moti" Ferder founded Lugano, and served as its Chief Executive Officer until his resignation on May 7, 2025.

11. Defendant Elias J. Sabo ("Sabo") has served as the Company's Chief Executive Officer at all times relevant to this complaint.

12. Defendant Ryan J. Faulkingham ("Faulkingham") served as the Company's Chief Financial Officer and the underlying trust's Regular Trustee at all times relevant to this complaint until August 30, 2024.

13. Defendant Stephen Keller ("Keller") has served as the Company's Chief Financial Officer and the underlying trust's Regular Trustee since August 31, 2024.

14. Defendants Ferder, Sabo, Faulkingham, and Keller are collectively referred to herein as the "Individual Defendants."

15. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

    (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (g) approved or ratified these statements in violation of the federal securities laws.

16. Compass is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

17. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

18. Compass and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements
### Issued During the Class Period

19. On May 1, 2024, Compass filed with the SEC its quarterly report on Form 10-Q F for the period ended March 31, 2024 ("1Q24 10-Q"). Attached to the 1Q24 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Sabo and Faulkingham and attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

20. The 1Q24 10-Q contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> …the Trust's Regular Trustees and the Chief Executive Officer and Chief Financial Officer of the LLC concluded that the Trust's and the LLC's disclosure controls and procedures were effective as of March 31, 2024.

21. This statement was materially false and misleading at the time it was made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by

Compass' subsidiary, Lugano Holdings, Inc.

22. The 1Q24 10-Q also contained comprehensive financial statements regarding the Company's financial performance in the reporting period.

23. These statements were materially false and misleading at the time they were made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Compass' subsidiary, Lugano Holdings, Inc.

24. On July 31, 2024, Compass filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2024 ("2Q24 10-Q"). Attached to the 2Q24 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Sabo and Faulkingham and attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25. The 2Q24 10-Q contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> …the Trust's Regular Trustees and the Chief Executive Officer and Chief Financial Officer of the LLC concluded that the Trust's and the LLC's disclosure controls and procedures were effective as of June 30, 2024.

26. This statement was materially false and misleading at the time it was made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Compass' subsidiary, Lugano Holdings, Inc.

27. The 2Q24 10-Q also contained comprehensive financial statements regarding the Company's financial performance in the reporting period.

28. These statements were materially false and misleading at the time they

were made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Compass' subsidiary, Lugano Holdings, Inc.

29. On October 30, 2024, Compass filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2024 ("3Q24 10-Q"). Attached to the 2Q24 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Sabo and Keller and attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

30. The 3Q24 10-Q contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> …the Trust's Regular Trustees and the Chief Executive Officer and Chief Financial Officer of the LLC concluded that the Trust's and the LLC's disclosure controls and procedures were effective as of September 30, 2024.

31. This statement was materially false and misleading at the time it was made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Compass' subsidiary, Lugano Holdings, Inc.

32. The 3Q24 10-Q also contained comprehensive financial statements regarding the Company's financial performance in the reporting period.

33. These statements were materially false and misleading at the time they were made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Compass' subsidiary, Lugano Holdings, Inc.

34. On February 27, 2025, Compass filed with the SEC its annual report

on Form 10-K for the period ended December 31, 2024 ("2024 Annual Report"). Attached to the 2024 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Sabo and Keller and attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

35. The 2024 Annual Report contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2024… our management concluded that our internal control over financial reporting was effective as of December 31, 2024.

36. This statement was materially false and misleading at the time it was made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Compass' subsidiary, Lugano Holdings, Inc.

37. The 2024 Annual Report also contained comprehensive financial statements regarding the Company's financial performance in the reporting period.

38. These statements were materially false and misleading at the time they were made because of certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Compass' subsidiary, Lugano Holdings, Inc.

### **THE TRUTH EMERGES**

39. On May 7, 2025, after the market closed, Compass issued an 8-K and attached press release titled "Compass Diversified Discloses Non-Reliance on Financial Statements for Fiscal 2024 Amid an Ongoing Internal Investigation into

its Subsidiary, Lugano Holding, Inc." In this release, Compass announced that it "has preliminarily identified irregularities in Lugano's non-CODI financing, accounting, and inventory practices. After discussing with senior leadership and investigators, the Audit Committee of CODI's Board has concluded that the previously issued financial statements for 2024 require restatement and should no longer be relied upon."

40. The release also announced that Compass intended to delay the filing of its first quarter 2025 Form 10-Q.

41. On this news, the price of Compass stock fell 8% during after-hours trading on May 7, 2025, and continued to drop precipitously in early trading hours the next day.

42. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and the other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Compass securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is

unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

45. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

49. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's securities met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- as a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

50. Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

56. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

57. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or

the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

58. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

59. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

60. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

61. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

# COUNT II
## Violations of Section 20(a) of the Exchange Act
## Against the Individual Defendants

62. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

64. As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

65. Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

66. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:   May 9, 2025            **THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684

Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS