POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
jpafiti@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190

*Counsel for Movant The KL Kamholz
Joint Revocable Trust and Proposed
Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT J. MATTHEWS, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>COMPASS GROUP DIVERSIFIED HOLDINGS, LLC., COMPASS DIVERSIFIED HOLDINGS, MORDECHAI HAIM FERDER, ELIAS J. SABO, RYAN J. FAULKINGHAM, and STEPHEN KELLER,<br><br>    Defendants. | Case No. 8:25-cv-00981-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE KL KAMHOLZ JOINT REVOCABLE TRUST FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**<br><br>DATE:  August 7, 2025<br>TIME:  10:00 a.m.<br>JUDGE:  John D. Early<br>CTRM:  6A |

| | |
|---|---|
| TODD AUGENBAUM, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     vs.<br><br>COMPASS DIVERSIFIED HOLDINGS, COMPASS GROUP DIVERSIFIED HOLDINGS LLC, COMPASS GROUP MANAGEMENT LLC, ELIAS J. SABO, RYAN J. FAULKINGHAM, and STEPHEN KELLER,<br><br>                    Defendants. | Case No. 8:25-cv-01003-DOC-JDE |
| KEVIN TAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>COMPASS DIVERSIFIED HOLDINGS, COMPASS GROUP DIVERSIFIED HOLDINGS LLC, COMPASS GROUP MANAGEMENT LLC, ELIAS J. SABO, RYAN J. FAULKINGHAM, STEPHEN KELLER, and PATRICK A. MACIARIELLO,<br><br>                    Defendants. | Case No. 2:25-cv-05777-JAK-MAR |

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ....................................................................................2

II.     STATEMENT OF FACTS ..........................................................................................4

III.    ARGUMENT...............................................................................................................8

      A.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........................................................................................................8

      B.     THE TRUST SHOULD BE APPOINTED LEAD PLAINTIFF..............9

            1.     The Trust Is Willing to Serve as Class Representative..................... 10

            2.     The Trust Has the "Largest Financial Interest"................................ 11

            3.     The Trust Otherwise Satisfies the Requirements of Rule 23 ........... 12

            4.     The Trust Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .................................. 15

      C.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..........................................................................................................16

IV.     CONCLUSION...........................................................................................................17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Hessefort v. Super Micro Comput., Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ........................................................................13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...........................................................................................11

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..............11

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...............................................................................11

*In re Solar City Corp. Sec. Litig.*,
    No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ..........................13

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .........................................................................12

*Lax v. First Merchants Acceptance Corp*
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)......................................11, 12

*Mulligan v. Impax Lab'ys, Inc.*,
    No. C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013)................................8

*Nicolow v. Hewlett Packard Co.*,
    No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .................................12

*Osher v. Guess?, Inc.*,
    No. CV01-00871LGB(RNBX), 2001 WL 861694 (C.D. Cal. Apr. 26, 2001).............16

*Richardson v. TVIA, Inc.*,
    No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)......................8, 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .........................................................................................14

*Tai Jan Bao v. SolarCity Corp.*,
    No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014).......................13

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ........................................................................ *passim*

**Rules and Regulations**

17 C.R.F. § 240.10b-5.............................................................................................................9

Fed. R. Civ. P. 23................................................................................................ *passim*

Fed. R. Civ. P. 42.............................................................................................1, 2, 8, 9

Movant The KL Kamholz Joint Revocable Trust (the "Trust") respectfully submits this Memorandum of Points and Authorities in support of its motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Trust as Lead Plaintiff on behalf of a class (the "Class") consisting of all investors who purchased or otherwise acquired Compass Group Diversified Holdings, LLC and Compass Diversified Holdings (together, "Compass" or the "Company") securities between February 24, 2022 to May 7, 2025, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

---

[1] On May 9, 2025, the first-filed of the Related Actions was filed in this District, styled *Robert J. Matthews v. Compass Group Diversified Holdings, LLC et al.*, No. 8:25-cv-00981 (the "*Matthews* Action"), alleging a class period including persons or entities who purchased or otherwise acquired publicly traded Compass securities between May 1, 2024 and May 7, 2025, inclusive. *See* Dkt. No. 1 ¶ 1. On May 12, 2025, a second action alleging substantially the same wrongdoing as the *Matthews* Action against overlapping defendants was filed in the United States District Court for the District of Connecticut, styled *Moreno v. Compass Group Diversified Holdings LLC et al.*, No. 3:25-cv-00758 (the "*Moreno* Action"), alleging the same class period as alleged in the *Matthews* Action on behalf of a similar class of investors. *See Moreno* Action, Dkt. No. 1 ¶ 1. Also on May 12, 2025, a third action alleging substantially the same wrongdoing as the *Matthews* and *Moreno* Actions against overlapping defendants was filed in this District, styled *Todd Augenbaum v. Compass Diversified Holdings et al.*, No. 8:25-cv-01003 (the "*Augenbaum* Action"), alleging the same class period as alleged in the *Matthews* and *Moreno* Actions

## I.    PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  Compass investors, including the Trust, incurred significant losses following the disclosures of the alleged fraud, which caused Compass's share price to fall sharply, damaging the Trust and other Compass investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the Exchange Act by overlapping defendants arising from substantially the same alleged fraud.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

---

on behalf of a similar class of investors.  *See Augenbaum* Action, Dkt. No. 1 ¶ 5.  On June 24, 2025, the plaintiff in the *Moreno* Action filed an amended complaint (the "*Moreno* Amended Complaint"), alleging substantially the same wrongdoing as the *Matthews* and *Augenbaum* Actions against overlapping defendants, and a larger class period including all investors who purchased or otherwise acquired Compass' securities between February 24, 2022 to May 7, 2025, inclusive.  *See Moreno* Action, Dkt. No. 13 ¶ 1.  Then, on June 25, 2025, a fourth action alleging substantially the same wrongdoing as the *Matthews*, *Moreno*, and *Augenbaum* Actions against overlapping defendants was filed in this District, styled *Kevin Tan v. Compass Diversified Holdings et al.*, No. 2:25-cv-05777 (the "*Tan* Action"), alleging a class period including all persons and entities who purchased or otherwise acquired Compass securities between March 1, 2023 and May 7, 2025, inclusive.  *See Tan* Action, Dkt. No. 1 ¶ 1.  Therefore, without conceding that it is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the largest class period alleged in the *Moreno* Amended Complaint.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, the Trust purchased 2,516 shares of Compass preferred stock, expended $60,054 on these purchases, retained 2,516 of its shares of Compass preferred stock, and as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $17,620 in connection with its Class Period transactions in Compass securities.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A.  Accordingly, the Trust believes that it has the largest financial interest in the relief sought in this litigation.  Beyond its considerable financial interest, the Trust also meets the applicable requirements of Rule 23 because its claims are typical of those of absent Class members and because it will fairly and adequately represent the interests of the Class.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, the Trust has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, the Trust respectfully requests that the Court enter an Order consolidating the Related Actions, appointing the Trust as Lead Plaintiff for the Class, and approving the Trust's selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the complaints in the Related Actions, Compass is a holding company and trust created for the purpose of acquiring and managing a group of small and middle-market businesses headquartered in North America.

Compass Group Management LLC ("CGM") is the manager for Compass. Compass pays management fees to CGM, which includes the compensation paid to Compass's executive management, all of whom are employees of CGM. Pursuant to the Management Services Agreement applicable in 2024, Compass paid CGM a quarterly management fee equal to 0.5% (2% annually) of its consolidated adjusted net assets.

Compass takes controlling interests in and actively manages businesses that Defendants claim: (i) operate in industries with long-term macroeconomic growth opportunities; (ii) have positive and stable cash flows; (iii) face minimal threats of technological or competitive obsolescence; and (iv) have strong management teams largely in place. Defendants represent that Compass offers investors a unique opportunity to own a diverse group of leading middle-market businesses in the branded-consumer, industrial, and healthcare and critical outsourced services sectors that they might not otherwise have access to outside the private equity industry.

On September 7, 2021, Compass announced the acquisition of a majority interest in Lugano Holdings, Inc. ("Lugano"), a designer, manufacturer, and marketer of high-end jewelry, in a deal with an enterprise value of $256 million (excluding working capital and certain other adjustments upon closing). Based in Newport Beach, California, Lugano designs and manufactures unique jewelry for the luxury goods market. Lugano conducts sales via its own retail salons as well as pop-up showrooms at Lugano-hosted or sponsored events in partnership with organizations in the equestrian, art, and philanthropic communities. The acquisition substantially increased the management fees paid by Compass to CGM (and thus individual Defendants). For example, the fees paid to CGM in 2022 (the first full year after the acquisition) equaled nearly $63 million, compared to approximately $35 million in 2020.

In Compass's annual report on Form 10-K for its fiscal year 2022, Compass disclosed that it had repeatedly increased Lugano's intercompany credit agreement during 2022 to permit additional investment in inventory. Compass disclosed, in relevant part:

> During the first quarter of 2022, the Lugano intercompany credit agreement was amended to increase the amount available under the revolving credit facility to permit additional investment in inventory, and amended the financial covenants to reflect the increase in the revolving credit facility. We amended the Lugano intercompany credit agreement again in the second quarter of 2022 to increase the amount in available under the revolving credit facility to permit additional investment in inventory, and amended the financial covenants to reflect the increase in the revolving credit facility. During the fourth quarter of 2022, the Lugano intercompany credit agreement was amended to allow for an additional Term A Loan.

In Compass's annual report on Form 10-K for its fiscal year 2024, in the context of revenue recognition from the sale of inventory, Compass disclosed a nearly 178% increase in the amount of non-monetary exchanges at Lugano between fiscal years 2022 and 2023. Compass disclosed, in relevant part:

> Certain sale transactions at our Lugano operating segment also include a nonmonetary exchange of inventory with customers whereby the consideration received for the sale transaction has a non-cash component. The transaction price for a sale to a customer includes all cash and non-cash consideration. The non-cash consideration represents the non-monetary exchange of inventory and is measured at the fair-value of the exchanged item. The amount of non-monetary exchanges at Lugano was $154.9 million, $105.5 million and $38.0 million, respectively, in the years ended December 31, 2024, 2023 and 2022.

Beginning in 2024, Lugano began purchasing inventory from a vendor who is a related party to Lugano through one of the executive officers of Lugano. That same year, Lugano sales growth accelerated. For the fiscal year ended December 31, 2024, net revenue attributable to Lugano grew by more than $162 million year-over-year, accounting for over 21% of the Company's total net sales—approximately double the proportion of Company sales attributable to Lugano just two years previously. For fiscal 2024, Lugano also accounted for over 57% of Compass's total operating income, making the business the most profitable among all Company businesses. The strong sales at Lugano contributed to nearly $75 million in 2024 management fees paid to Defendant CGM (which flowed through to individual Defendants), a significant increase compared to prior years.

Throughout the Class Period, Defendants made materially false and/or misleading statements. The true facts, which were known to or recklessly disregarded by Defendants, were that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices; (ii) Lugano's financial results had been artificially distorted by these irregularities; (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

On May 7, 2025, Compass issued a press release announcing that its 2024 financial statements should no longer be relied upon and that Compass intended to delay the filing of its first quarter 2025 Form 10-Q. The Company stated that an ongoing investigation into Lugano had identified "irregularities in Lugano's non-[Compass] financing, accounting, and inventory practices." Compass also stated that Moti Ferder, founder and Chief Executive Officer of Lugano, had been terminated.

As a result of these disclosures, Compass's stock price declined by $10.70 per share, or approximately 62%, on May 8, 2025, on abnormally high trading volume of over 14 million shares traded. Compass preferred shares also suffered significant price declines, inflicting substantial financial losses and economic damages on members of the Class. For

example, Compass Preferred C shares declined by $6.91 per share, or 30%, on May 8, 2025, on abnormally high trading volume of over 600,000 shares traded.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Compass securities, the Trust and other Class members have suffered significant losses and damages under the federal securities laws.

## III.    ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication.  When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.  Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at \*2 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Lab'ys, Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at \*2-3 (N.D. Cal. July 2, 2013).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder, by the same Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions should be consolidated pursuant to Rule 42(a) for all purposes.

## B.    THE TRUST SHOULD BE APPOINTED LEAD PLAINTIFF

The Trust should be appointed Lead Plaintiff because it has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the litigation to its knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate.  *See id.*  § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Trust satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. The Trust Is Willing to Serve as Class Representative

On May 9, 2025, counsel for plaintiff in the first-filed of the Related Actions (*i.e.*, the *Matthews* Action) caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Compass and other defendants, and advising investors in Compass securities that they had until July 8, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Pafiti Decl., Ex. B.

The Trust has filed the instant motion pursuant to the Notice, and it has attached a sworn Certification executed on its behalf by Kenneth Kamholz ("Kamholz"), Trustee of the Trust, attesting that the Trust is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, the Trust satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.   The Trust Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, the Trust has the largest financial interest of any Compass investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these so-

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same).  Of the *Lax* factors, courts in the Ninth Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, the Trust: (1) purchased 2,516 shares of Compass preferred stock; (2) expended $60,054 on these purchases; (3) retained 2,516 of its shares of Compass preferred stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $17,620 in connection with its Class Period transactions in Compass securities.  *See* Pafiti Decl., Ex. A.  To the extent that the Trust possesses the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    The Trust Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil

Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies Rule 23's requirements is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 WL 1129344, at *4 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The Trust's claims are typical of those of the Class.  The Trust alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Compass, or by omitting to state material facts necessary to make the statements they did make not misleading.  The Trust, like other Class members, purchased Compass securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Compass's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

The Trust is an adequate representative for the Class.  Here, the Trust has submitted a sworn Certification signed by its Trustee, Kamholz, with authority to bind the Trust and enter into litigation on its behalf, declaring the Trust's commitment to protect the interests of the Class.  *See* Pafiti Decl., Ex. C.  There is no evidence of antagonism or conflict

between the Trust's interests and those of the Class, and the Trust's significant financial interest demonstrates that it has a sufficient interest in the outcome of this litigation that gives it an incentive to vigorously prosecute the claims in this litigation on behalf of the Class. Moreover, as set forth in greater detail below, in Pomerantz, the Trust has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits its choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, the Trust is also represented by Wohl & Fruchter LLP in this litigation.

Further demonstrating its adequacy, the Trust has submitted a Declaration signed by Kamholz attesting to, *inter alia*, the Trust's and Kamholz's respective backgrounds and investing experience, Kamholz's understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, Kamholz's decision to seek the Trust's appointment as Lead Plaintiff, and the steps that the Trust is prepared to take to prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. D.

### 4. The Trust Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring the Trust's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Trust's ability and desire to fairly and adequately represent the Class has been discussed above.  The Trust is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.  Accordingly, the Trust should be appointed Lead Plaintiff for the Class.

## C.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with a Lead Plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Osher*, 2001 WL 861694, at *4 ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class.").

Here, the Trust has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Pafiti Decl., Ex. E.  In overview, Pomerantz is a premier firm in the area of securities litigation based

in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id. Petrobras* is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Related Actions, the Trust's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving the Trust's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, the Trust respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Trust as Lead Plaintiff for

the Class; and (3) approving the Trust's selection of Pomerantz as Lead Counsel for the Class.

Dated: July 8, 2025                                    Respectfully submitted,

                                                       POMERANTZ LLP

                                                       */s/ Jennifer Pafiti*
                                                       Jennifer Pafiti (SBN 282790)
                                                       1100 Glendon Avenue, 15th Floor
                                                       Los Angeles, California 90024
                                                       Telephone: (310) 405-7190
                                                       jpafiti@pomlaw.com

                                                       *Counsel for Movant The KL Kamholz Joint
                                                       Revocable Trust and Proposed Lead
                                                       Counsel for the Class*

                                                       WOHL & FRUCHTER LLP
                                                       Joshua E. Fruchter
                                                       (*pro hac vice* application forthcoming)
                                                       25 Robert Pitt Drive, Suite 209G
                                                       Monsey, New York 10952
                                                       Telephone: (845) 290-6818
                                                       Facsimile: (718) 504-3773
                                                       jfruchter@wohlfruchter.com

                                                       *Additional Counsel for Movant The KL
                                                       Kamholz Joint Revocable Trust*

CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for The KL Kamholz Joint Revocable Trust, certifies that this brief contains 4,409 words, which complies with the word limit of L.R. 11-6.1.

Executed on July 8, 2025.

/s/ *Jennifer Pafiti*
Jennifer Pafiti

CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti